OPINION OF THE COURT
Barbara Jaffe, J.
By notice of petition and verified petition dated July 2, 2010, petitioner brings this proceeding, pursuant to CPLR article 78, to set aside a decision after fair hearing dated March 9, 2010, rendered by respondent Elizabeth R. Berlin, Executive Deputy Commissioner of the New York State Office of Temporary and Disability Assistance (OTDA) (State respondent), who affirmed the determination of respondents Robert Doar, Commissioner of the New York City Human Resources Administration (HRA), and Jacqueline Dudley, Acting Deputy Commissioner of the New York City HIV/AIDS Services Administration (HASA) (collectively, City respondents).
Petitioner contends that City respondents improperly failed to follow their own policies in implementing OTDA Administrative Directive 09-ADM-03 (petition, exhibit B) and that, therefore, they improperly calculated her emergency shelter allowance (ESA). She seeks a recalculation of the ESA in accordance with the Administrative Directive and a determination that City respondents’ decision and State respondent’s upholding of it are arbitrary and capricious. (Id.)
By verified answer dated August 3, 2010, State respondent denies that its action is irrational and asserts that the petition should, therefore, be dismissed. By notice of cross motion dated August 5, 2010, City respondents cross-move for an order dismissing the petition for failure to state a claim, asserting that they properly calculated petitioner’s benefits and that their actions are neither arbitrary nor capricious.
I. Underlying Facts and Procedural History
Petitioner lives at 1654 Dean Street, second floor, Brooklyn, New York, with her two children, a 19-year-old son who, like his mother, has clinical/symptomatic HIV-related illness, and an eight-year-old daughter. Petitioner receives public assistance from HRA and is a client of HASA. (Id. 1Í1Í 4, 16.) Her son receives Supplemental Security Income (SSI). (Id. H1i 4, 15-17.)
*539 The monthly rent for petitioner’s apartment is $1,000. (Id. 1i 15.) In September 2008, petitioner asked that her son be removed from her household pursuant to Social Services Law § 131-c, which excludes SSI benefits from consideration when determining eligibility for and the amount of public assistance. (Id. H 20.) Petitioner’s son was thereupon removed from petitioner’s budget, retroactive to April 2008, and petitioner received $2,388 in retroactive benefits. (Id. 1i 21.) City respondents then recalculated her rent budget based upon a two-person household and, pursuant to 18 NYCRR 352.3 (k) (2) (“[a]n emergency shelter allowance must not exceed $480 for the first person in the household and $330 for each additional person in the household, and in no event be greater than the actual monthly rent due”), set her monthly ESA allowance at $810, consisting of $480 for herself and $330 for her daughter. (Petition If 23.)
On June 4, 2009, petitioner challenged the reduction in her ESA from $1,000 to $810 at an administrative fair hearing, which resulted in a decision after fair hearing (DAFH) dated March 25, 2009. Contending that the DAFH requires City respondents to restore her ESA to $1,000 per month, and upon City respondents’ failure to do so, she brought an article 78 proceeding. (Id. 1I1f 28-29.) Thereafter, on July 1, 2009, City respondents issued a notice (July 2009 Notice) stating that petitioner’s prior ESA was based on a three-person household and that due to her son’s removal from the household, she now had a two-person household and was thus limited to an ESA of $810, the maximum for a two-person household under the regulation. (Id., exhibit D.)
By order dated August 24, 2009, another justice of this court dismissed petitioner’s challenge to the DAFH as premature, finding that after she had commenced the proceeding, the amount of her ESA was clarified by the July 2009 Notice. Petitioner then requested a new fair hearing to review the July 2009 Notice, which resulted in a determination upholding it.
II. Contentions
Petitioner argues that Administrative Directive 09-ADM-03 prescribes how 18 NYCRR 352.3 (k) (2) is to be implemented and relies on examples 2 and 6 set forth therein, in which rental assistance in excess of the regulation’s provision of $810 for a two-person household is permitted. She also offers an operational alert issued by HASA on June 7, 2009, providing that it *540 would approve new apartments using a monthly rental of $1,069 for a two-bedroom apartment (id., exhibit F), and HRA records which show that, as of October 2009, 19,487 households, or 62.7% of the case load, were receiving more than the enhanced shelter allowance (id., exhibit G).
Petitioner thus asserts that applying the regulation to reduce her ESA from $1,000 to $810 is arbitrary and capricious, and that the determination should be set aside and her ESA recalculated in accordance with the Administrative Directive. She offers a determination rendered by respondent in Matter of Acquinetha McFadden (FH No. 5300755Q [2009] [petition, exhibit K]) as evidence of the arbitrariness with which the determination was made in her case. At oral argument, she withdrew exhibits which had not been presented to State respondent. (Petition, exhibits H, I, J.)
According to City respondents, before October 2008, petitioner’s budget was calculated based on a three-person household with a breakdown of $119 for a semimonthly basic grant, a semimonthly energy allowance of $26.50, a semimonthly nutrition and transportation allowance of $96.87, plus half of the monthly rent of $1,000, i.e., $500, totaling $742.37, rounded to $742. The budget included her son’s semimonthly SSI income of $330 and gave petitioner a total semimonthly grant of $412 (July 2009 Notice). At petitioner’s request, her grant was recalculated by removing her son from the household and subtracting his semimonthly SSI income of $330. (Id.) This recalculation resulted in a two-person household with a semimonthly basic grant of $89.50, a semimonthly energy allowance of $19.75, a semimonthly nutrition and transportation allowance of $96.87 and a semimonthly rental allowance of $405. (Id.) The total semimonthly grant was thereby increased from $412 to $611, although some of the individual grants were reduced. (Affirmation of Christine Julien, Esq., dated Aug. 5, 2010, 1Í 22.)
City respondents maintain that they properly applied the regulation, which provides for a maximum monthly ESA for a two-person household of $810, and that the examples provided in the Administrative Directive are not binding. Rather, they assert, the Directive should be applied in accordance with the Social Services Law and regulation. To include the needs of petitioner’s son, they argue, would violate both the regulation and the Administrative Directive, which do not require consideration of petitioner’s actual rent, except to the extent *541 that they do not permit the ESA to exceed it. By following the regulation, which clearly states that the monthly ESA for a two-person household “must not exceed” $810, they assert that they acted rationally. (Id.)
State respondent likewise observes that petitioner’s total allowance was increased as a result of the exclusion of the income and needs of petitioner’s son (State respondent’s verified answer 1i 15 n 1), and argues that the Administrative Directive and regulation implement Social Services Law § 131-c, which prohibits consideration of the son’s SSI and needs once he was removed from the household, that City respondents’ determination to follow the regulation and use the maximum emergency shelter allowance for a two-person household was neither arbitrary nor capricious, and that exceeding the regulation’s maximum for a two-person household would constitute an improper substitution of the court’s judgment for that of the administrative agency (State respondent’s verified answer 1Í1Í 47-48). It also claims “[i]t is well within [its] discretion whether to award an ESA recipient a greater amount of benefits, if there is a demonstrated need for such exception to the regulation, so long as the benefits awarded are not less than what is required under the law.” (State respondent’s mem of law.)
Respondents thus seek summary dismissal of the petition.
III. Analysis
Pursuant to 18 NYCRR 352.3 (k) (2):
“An emergency shelter allowance must not exceed $480 for the first person in the household and $330 for each additional person in the household, and in no event be greater than the actual monthly rent due. A person with AIDS or HIV-related illness is considered to be the first person in the household.”
The Administrative Directive, effective April 1, 2008, excludes from the calculation of a recipient’s eligibility for and the amount of the ESA “the income or the needs of any SSI recipient, regardless of his/her medical status and relationship to the other members of the household, when such individual is not the ‘first person’ in the household” (Administrative Directive 09-ADM-03 at 3).
In reviewing an administrative agency’s determination as to whether it is arbitrary and capricious under CPLR article 78, the test is whether the determination “is without sound basis in reason and . . . without regard to the facts.” (Matter of Pell v *542 Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 231 [1974]; Matter of Kenton Assoc. v Division of Hous. & Community Renewal, 225 AD2d 349 [1st Dept 1996].) Thus, an administrative agency,
“acting pursuant to its authority and within the orbit of its expertise, is entitled to deference, and even if different conclusions could be reached as a result of conflicting evidence, a court may not substitute its judgment for that of the agency when the agency’s determination is supported by the record.” (Matter of Partnership 92 LP & Bldg. Mgt. Co., Inc. v State of N.Y. Div. of Hous. & Community Renewal, 46 AD3d 425, 428-429 [1st Dept 2007], affd 11 NY3d 859 [2008] [citations omitted].)
However, while administrative agencies have broad discretion to determine matters under their purview, an agency may not treat similarly-situated individuals disparately. (2 NY Jur 2d, Administrative Law § 74 [2010] [and cases cited therein].) Thus, “[a] decision of an administrative agency which neither adheres to its own prior precedent nor indicates its reason for reaching a different result on essentially the same facts is arbitrary and capricious.” (Matter of Charles A. Field Delivery Serv. [Roberts], 66 NY2d 516, 517 [1985].) In so ruling, the Court of Appeals explained that requiring consistent results in administrative proceedings is intended “to provide guidance for those governed by the determination made; ... to deal impartially with litigants; promote stability in the law; allow for efficient use of the adjudicatory process; and to maintain the appearance of justice.” (66 NY2d at 519 [citation omitted].) The Court concluded that
“[fjrom the policy considerations embodied in administrative law, it follows that when an agency determines to alter its prior stated course it must set forth its reasons for doing so. Unless such an explanation is furnished, a reviewing court will be unable to determine whether the agency has changed its prior interpretation of the law for valid reasons, or has simply overlooked or ignored its prior decision. Absent such an explanation, failure to conform to agency precedent will, therefore, require reversal on the law as arbitrary, even though there is in the record substantial evidence to support the determination made.” (66 NY2d at 520 [citations omitted].)
*543 As the Court there determined that the facts underlying the agency’s determination in the case before it were sufficiently similar to prior cases that the agency had decided differently, it remanded the matter to the agency to explain why it had reached a different result.
Here, the regulation supports City respondents’ position that they were required to reduce petitioner’s rent from $1,000 to $810 in calculating her ESA. Thus, respondents’ determination does not, at first blush, appear to be arbitrary and capricious.
However, there is no dispute that between October 2008 and October 2009, City respondents provided 69.8% of their clients with enhanced rental assistance, thereby demonstrating that they often grant higher ESA amounts than permitted by the regulation. Moreover, in McFadden, the evidence was substantially identical to the evidence presented in petitioner’s case. There, the petitioner was the head of the household with two children living with her, including a son who received SSI/Social Security Disability benefits, and the issue was whether respondent had properly calculated the petitioner’s benefits after removing the petitioner’s son from the ESA calculation. The petitioner’s rent was $1,400 a month and, after removing the son from the household, respondent calculated the ESA, notwithstanding the regulation, without reducing her monthly rent to $810 and without explanation. McFadden thus evidences City respondents’ departure from their own precedent in petitioner’s case. (See Matter of Klein v Levin, 305 AD2d 316 [1st Dept 2003], lv denied 100 NY2d 514 [2003] [as petitioner’s license application involved same facts as in prior case in which another petitioner’s license had been granted, and respondent failed to offer adequate explanation for different treatment, denial of license annulled as arbitrary and capricious]; Matter of Kopyt v Governor’s Off. of Empl. Relations, 55 AD3d 1179 [3d Dept 2008] [absent from respondent’s determination was explanation of its departure from decision in prior matter which, based on essentially same facts, was decided differently, making decision arbitrary and capricious]; Matter of Muhlstein v New York City Human Resources Admin., 55 AD3d 736 [2d Dept 2008] [as respondent had in two prior cases found that certain payments were reimbursable if accompanied by affidavits, and absent explanation for not considering affidavits submitted by petitioner, determination annulled]; Matter of 721 Ninth Ave., LLC v New York State Div. of Hous. & Community Renewal, 8 *544 AD3d 41 [1st Dept 2004] [respondent failed to follow prior determination in case with similar facts or explain reasons for different result]; Matter of Goldstein v Brown, 189 AD2d 649 [1st Dept 1993] [respondent provided no explanation for treating petitioner differently than other applicants]; Matter of Rupp v New York City Bd. of Stds. & Appeals, 2007 NY Slip Op 30736[U] [Sup Ct, New York County 2007] [evidence indicated that respondent had approved similar structures, which respondent did not controvert or explain why it reached different result].)
The Administrative Directive, while not binding on City respondents, sets forth examples permitting them to grant higher ESAs, thereby also demonstrating that rent of more than $810 for a two-person household may be considered. (See e.g. Matter of Hakim v Division of Hous. & Community Renewal, 273 AD2d 3 [1st Dept 2000], appeal dismissed 95 NY2d 887 [2000] [as respondent’s interoffice memorandum was intended to serve as guideline, respondent’s failure to consider petitioner’s case in light of memorandum demonstrated failure to adhere to existing standards and precedent in rendering decision].) Petitioner has thus demonstrated that City respondents failed to adhere to their own precedent and past practices and failed to indicate a reason for reaching a different result in her case.
City respondents’ discretionary authority to adhere to the regulation by calculating petitioner’s ESA without regard to the examples set forth in the Administrative Directive does not preclude a finding that the determination is arbitrary and capricious absent an explanation of it or of their departure from the determination rendered in McFadden, or of the origin or nature of their discretion and on what grounds it may be exercised, or of what would be a “demonstrated need” for an exception to the regulation. Most importantly, there is no indication that City respondents exercised their discretion in calculating petitioner’s ESA, nor have they shown that they considered whether there was a demonstrated need to depart from the regulation in her case.
The totality of these circumstances does not inspire confidence in the administrative determination reached in petitioner’s case, one which determined the amount of emergency shelter assistance available to a family with members living with HIY/AIDS. Rather, the determination reflects a failure to adhere to the goals, set forth in Field Delivery Serv. (66 NY2d at 519), of *545 providing guidance for those governed by the determination, dealing impartially with litigants, promoting stability in the law, and maintaining the appearance of justice. It has thus been shown to be arbitrary and capricious and is not entitled to deference.
Whether respondents should ultimately exercise their discretion in petitioner’s favor is not the issue here. Rather, the issue is whether respondents, in light of their past practices and precedent, should be compelled to either follow those practices and precedent or explain why they need not do so in petitioner’s case.
IV Conclusion
Accordingly, it is hereby, ordered and adjudged, that the petition is granted and the cross motion to dismiss the petition is denied; and it is further ordered and adjudged, that the respondents’ determination is annulled and vacated and the matter is remanded to respondents for further proceedings consistent with this decision.